1341

Wayne H. SHOAF and Perry L. Jones, Appellants v. Paul W. WARLICK, Jr., Respondent.

(380 S. E. (2d) 865)

Court of Appeals

*David L. Freeman* and *Wallace K. Lightsey* of *Wyche, Burgess, Freeman & Parham, P.A.*, Greenville, *for appellants.*

*Steven E. Farrar* of *Leatherwood, Walker, Todd & Mann,* Greenville, *Joseph B. Haynes* and *Michael Eric Ross* of *King & Spaudling,* Atlanta, Ga., *for respondent.*

Heard Feb. 22, 1989.

Decided May 30, 1989.

SHAW, Judge:

Appellants, Wayne H. Shoaf and Perry L. Jones, minority stockholders of the Coca-Cola Bottling Company of Anderson, S. C. (Coke-Anderson) instituted this action against respondent, Paul W. Warlick, Jr., former president, chief executive officer and stockholder of Coke-Anderson. Appellants alleged the respondent breached a fiduciary duty and received an unlawful premium in the sale of his majority interest in the Coke-Anderson stock to the Coca-Cola Bottling Company of Asheville, N. C. (Coke-Asheville). The trial judge granted summary judgment to respondent finding appellants failed to show respondent had breached any duty owed to appellants. We affirm.

Appellants were remainder beneficiaries of a testamentary trust created by Mr. R. Lee Ellis which trust held stock in Coke-Anderson. Respondent owned 25 shares of common stock of the 480 shares issued and outstanding of Coke-Anderson. He also controlled the stock of his aunt, Mrs. Ellis, who owned 106 shares of Coke-Anderson and held a life estate in the R. Lee Ellis Trust, his mother, Dorothy Warlick, who owned 104.5 shares of Coke-Anderson, and his uncle, C. T. Ingram, who owned 38 shares of Coke-Anderson. Thus, respondent controlled a total of 273.5 shares of Coke-Anderson, a majority interest.

In early 1985, George Renfro, senior executive vice-president of Coke-Asheville, and Thomas E. Nash, president and chief executive officer of Coke-Asheville, began serious negotiations with respondent concerning the purchase of Coke-Anderson stock by Coke-Asheville. Although respondent had been approached yearly since 1979 with the proposition of selling the Coke-Anderson stock to Coke-Asheville, it was

not until 1985 that he displayed interest in working out a sale.

The initial proposal of a price of $4,000,000 to respondent for delivery of the controlling stock was made by Mr. Renfro. During negotiations, respondent never haggled over the $4,000,000 figure, but did negotiate the price to be paid the other stockholders from an initial suggestion of $10,000 or $11,000 per share up to $14,000 per share. The last prior sale of stock had occurred in 1984 resulting in a price of $7,000 per share and the stock had a book value of $7,043 per share as of December 21, 1984.[1]

On April 20, 1985, Messrs. Renfro and Nash held a meeting with the Ellis Trust remaindermen to discuss the proposed purchase of the Coke-Anderson stock. At that meeting, full disclosure was given of the proposed agreement with respondent including explanation of the premium to be paid respondent for his controlling interest. On April 30, 1985, respondent entered into three separate option agreements with his aunt, mother and uncle which gave respondent the option to purchase their shares in Coke-Anderson for $14,000 per share. On May 30, 1985, respondent entered into an option agreement with Coke-Asheville whereby for $4,000,000 he granted to Coke-Asheville an option to acquire his own 25 shares of stock in Coke-Anderson and the right to purchase the 248.5 shares under the option agreement he held with his aunt, mother and uncle. Under the option agreement, respondent gave certain personal warranties, representations and covenants. He also agreed to a covenant not to compete for a period of five years for which respondent was to receive an additional sum of $360,000.

On September 12, 1985, while an action was pending by the trustee of the Ellis Trust for sale of the Coke-Anderson stock to Coke-Asheville, Mrs. Ellis died. Appellants Shoaf and Jones each became owners of 3.909091 shares of Coke-Anderson stock under distribution of the Ellis Trust. On September 18, 1985, Coke-Asheville made a written tender

---

[1] We mention these facts only to show that, not only were there no allegations of fraud, mismanagement, or a sale of control resulting in looting, it appears the respondent worked on behalf of the stockholders to increase their price per share substantially.

offer to Shoaf, Jones and the other beneficiaries of the Ellis Trust to purchase their shares of stock for $14,000 per share. In late October of 1985, the appellants each accepted the tender offer, but stated in a letter that they reserved their right to take legal action in connection to the payment of the premium to respondent. On December 2, 1985, Coke-Asheville closed its deal with respondent, exercising its option to purchase under their option agreement.

The issues we are asked to consider are whether Mr. Warlick had a fiduciary duty owed to the other stockholders and whether he breached this duty, and, whether Mr. Warlick has a basis to claim appellants are equitably estopped from attacking his premium received for his stock.

South Carolina has long followed the general rule that corporate stock is personal property which the owner may "dispose of ... as he sees fit." *Alderman v. Alderman*, 178 S. C. 9, 43, 181 S. E. 897, 911 (1935); *accord, e.g., McLeod v. Sandy Island Corp.*, 265 S. C. 1, 7, 216 S. E. (2d) 746, 748 (1975). Concomitantly, when selling stock, stockholders must "necessarily act for themselves, and not as trustees for other stockholders." *Swinney v. Keebler Co.*, 480 F. (2d) 573, 577 (4th Cir. 1973) (citation omitted) (recognizing South Carolina as the governing law, and finding no South Carolina cases directly on point, the court referred to applicable law from other jurisdictions). This general rule applies as well to majority stockholders:

> A dominant or majority shareholder is generally under no duty to the minority stockholders to refrain from receiving a premium upon the sale of his controlling stock.... (footnote omitted)

12B W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 5805.10, at 139 (rev. perm. ed. 1980).

This issues was more specifically framed and decided by the Florida Court of Appeals. Its analysis of the law speaks equally to the case at hand:

> The law of the marketplace dictates that a shareholder who has a controlling interest in a corporation will likely be able to receive a higher price per share than a minority shareholder. *As a general rule, nothing in the*

*law of the courthouse prevents a majority shareholder from retaining this "control premium." See Delano v. Kitch,* 663 F. (2d) 990, 998 (10th Cir. 1981); *Zetlin v. Hanson Holdings, Inc.,* 48 N. Y. (2d) 684, 421 N. Y. S. (2d) 877, 397 N. E. (2d) 387 (1979); H. Henn & J. Alexander, *Laws of Corporations and Other Business Enterprises* § 241, at 657 (3d ed. 1983). *This is so even if, as is so frequently the case, the controlling shareholder is an officer or director of the corporation.* E. Brodsky & M. P. Adamski, *Law of Corporate Officers and Directors* § 5:01, at 5-1 (1984). While some decades ago this general rule was under persistent attack in academia, it is clear that the rule survived unscathed in the courts and, indeed, now finds itself in fashion in a significant segment of academia. This debate aside, *courts have generally held firm to the rule:*

"The thoughtful and scholarly writings of the academic commentators on the sale of control have had surprisingly little influence on the way courts decide cases. With only infrequent and relatively minor exceptions, *the courts still adhere to the traditional view that a shareholder, irrespective of whether he is also a director, officer, or both, may sell his shares, just as he may sell other kinds of personal property, for whatever price he can obtain, even if his shares constitute a controlling block and the price per share is enhanced by that fact.* Further, the courts generally hold that neither the selling shareholder nor his purchaser is under an obligation to see that other shareholders are provided opportunities to sell their shares on the same favorable terms as the controlling shareholder or even to inform minority shareholders of the price and other terms of the sale of the controlling interest." O'Neal, *Symposium: Sale of Control-Introduction,* 4 J. Corp. L. 239, 239 (1979). (emphasis added, footnote omitted)

*Martin v. Martin,* 529 So. (2d) 1174 (Fla. 3d Dist. Ct. App. 1988).

We hold the issue of equitable estoppel is manifestly without merit. South Carolina Code Ann. 14-8-250 (Supp. 1988).

Accordingly, we affirm the decision of the trial court.

Affirmed.

BELL and GOOLSBY, JJ., concur.

